**FILED**
**Jan 21, 2022**
**09:05 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **MICHAEL THEUS,** | ) | **Docket No. 2020-07-0431** |
| **Employee,** | ) | |
| **v.** | ) | |
| **TOYOTA BOSHOKU AMERICA, INC.,** | ) | |
| **Employer,** | ) | **State File No. 59042-2019** |
| **And** | ) | |
| **MITSUI MARINE AND FIRE INS. CO.** | ) | |
| **OF AMERICA,** | ) | |
| **Carrier.** | ) | **JUDGE AMBER E. LUTTRELL** |

---

## COMPENSATION ORDER

---

The Court held a Compensation Hearing on Mr. Theus's right-shoulder claim. The issues are whether his injury is compensable, and if so, his entitlement to permanent partial disability benefits. For the reasons below, the Court holds that Mr. Theus's shoulder injury is compensable, and he is entitled to permanent partial disability benefits, including an increased award, totaling $49,269.98.

### History of Claim

Mr. Theus worked as a machine loader for Toyota. On August 5 and 6, 2019, he performed a different job inspecting parts, which required him to repetitively lift totes of parts weighing twenty-five to thirty pounds. On August 6, he lifted a tote and felt sharp pain in his back around his right shoulder blade. He reported the injury to his supervisor, Robert Yarbro, was examined by a plant nurse, and was instructed to return to work to visually inspect parts. Mr. Theus testified he experienced pain in the right side of his back and right arm the remainder of the shift.

Mr. Theus testified to a prior right-shoulder injury in 2008 from exercising. He had a rotator cuff repair surgery, and after recovery, his doctor released him with no restrictions. Mr. Theus testified he worked consistently after that injury without any right-shoulder pain until his 2019 work injury.[1]

---

[1] Mr. Theus also testified to one prior work injury to his *left* shoulder at Toyota.

1

After his work injury, Mr. Theus completed two "Affected Team Member Statements." He completed the first statement the day of the injury, describing the incident and marking the location of his pain on a diagram as the middle right side of his back. (Ex. 5.) Mr. Yarbro also prepared a statement and a Toyota accident report, which recounted Mr. Theus's report of lifting totes of parts and a sharp pain in the right side of his mid-back. (Ex. 6 and 7.) Mr. Theus said his initial pain was more in his back, but after a couple of days, he reported to Toyota that the pain was more in his right shoulder and arm. A human resources representative asked him to complete a second statement, where he marked his right shoulder on the diagram as the source of his pain. Mr. Theus testified that Toyota did not produce a copy of the second statement, but Toyota did not dispute Mr. Theus's testimony regarding the statement.

*Treatment and Evaluation*

Based on Mr. Theus's symptoms, Toyota provided a panel of physicians, from which he selected Dr. Peter Gardner. Mr. Theus saw Dr. Gardner and reported "sharp shooting pain from [his]shoulder blade to middle of [his] back" resulting from his work injury. Dr. Gardner gave a steroid injection, ordered physical therapy, and placed him on light duty. After two more visits, Dr. Gardner referred him to an orthopedic specialist, and Mr. Theus selected Dr. Jason Hutchison from a panel.

Mr. Theus saw Dr. Hutchison and completed an intake sheet, where he stated the reason for his visit was his right "shoulder/back" resulting from a work-related lifting injury on August 6. Mr. Theus told Dr. Hutchison about his right-shoulder injury from 2008 and stated that after recovering from surgery, he had no problems until this work injury.

Dr. Hutchison took a history of Mr. Theus stacking thirty-pound tubs for two days in a row when, on the second day, he "started having burning in his shoulder and back that worsened." On exam, Dr. Hutchison testified Mr. Theus had "horrible shoulder motion" and "very limited ability to move his arm." He stated Mr. Theus was "physically resisting me moving his shoulder." He believed Mr. Theus was magnifying his symptoms but was not malingering. Dr. Hutchison explained that symptom magnification is different than malingering. Unlike malingering, he testified that symptom magnification,

> does not mean that someone is making up or feigning illness. In situations of work comp, sometimes symptom magnification is just the patient's way of trying to make sure that you listen to them, or their fear that they're going to be overlooked or pushed out the door or not taken seriously, and so they go over the top with their symptoms.

Dr. Hutchison ordered an MRI to determine if Mr. Theus was "just carrying on," or if he had true pathology in the shoulder. After the MRI revealed a near full-thickness rotator cuff tear, Dr. Hutchison stated that Mr. Theus "ha[d] a reason to be hurting" and ordered

surgery. He further testified that "when you have pathology that can . . .and should generate pain, symptom magnification becomes less concerning to me."

At the next and final visit on May 4, 2019, Dr. Hutchison learned that Toyota denied the surgery. He testified, "it appeared that based upon the previous records and history on his shoulder . . . his shoulder surgery was denied as not caused by the alleged work incident." Dr. Hutchison stated he had nothing to do with Toyota's denial at that time. Based on the denial, Dr. Hutchison released Mr. Theus at maximum medical improvement. He continued previously-assigned restrictions of no lifting or pushing over five pounds, and no over-the-shoulder work with the right arm. Dr. Hutchison testified that those restrictions would continue, "assuming he has not had surgery or resolution of his symptoms."

After Dr. Hutchison released him, Mr. Theus saw Dr. Samuel Chung for an independent medical evaluation. Mr. Theus reported persistent shoulder pain, and he was unable to maintain functional movement in his shoulder. Dr. Chung reviewed Mr. Theus's treatment records and took a history of him repetitively stocking thirty-pound tubs on August 6, 2019, when he developed pain in his right shoulder. He stated that Mr. Theus did not describe an acute injury but that the lifting of the tubs caused the onset of his pain. Mr. Theus also told Dr. Chung about his prior injury in 2008 and that he regained full function in his shoulder after surgery and therapy.

Dr. Chung performed a physical exam and stated his exam findings were consistent with the MRI findings of a near full-thickness tear. Dr. Chung used a goniometer to measure Mr. Theus's active range of motion and found a moderate degree of motion loss in his flexion and abduction, and a mild degree of motion loss in extension, adduction, and internal and external rotation. Based on his range of motion loss, Dr. Chung assigned a permanent impairment rating of thirteen percent using the Sixth Edition of the AMA Guides. Dr. Chung did not know if Mr. Theus would still benefit from surgery, given the time that passed. He said he would defer that opinion to Dr. Hutchison.

*Physicians' Causation Testimony*

Dr. Hutchison gave two depositions. In his first deposition, he testified that Mr. Theus's employment was not "the primary cause greater than fifty-one percent." He stated that after reviewing the records from Mr. Theus's shoulder injury in 2008, and based on his symptom magnification, he could not say within a reasonable degree of medical certainty that his work injury was the primary cause of the rotator cuff tear.

At his second deposition, Dr. Hutchison revised his testimony by stating he could not say Mr. Theus's employment contributed "greater than fifty-percent in causing the injury." This time, he cited symptom magnification as the primary basis for his causation opinion. He said, "this guy's just−he's way over the top in his presentation." He further testified, "I cannot say to a reasonable degree of medical certainty that work did cause this.

3

I'm not saying that it didn't. It may have. But I can't say . . . that it did because this guy's too over the top. He's not believable to me."

On cross examination, Dr. Hutchison agreed that Mr. Theus's reported mechanism of injury−lifting and stacking thirty-pound tubs for two days−could cause a rotator cuff tear. He also testified that he had no records or other evidence to suggest Mr. Theus did not have "a complete recovery—a complete healing of the rotator cuff tear" from his surgery for his 2008 injury. In conclusion, Dr. Hutchison could not state "to any degree of medical certainty one way or the other" that Mr. Theus's shoulder injury did or did not occur at work.

Dr. Chung also gave two depositions and testified that Mr. Theus's reported work activities were the primary cause of his rotator cuff injury. Dr. Chung stated that Mr. Theus's repetitive work activities, including stocking the thirty-pound tubs over time, eroded the rotator cuff tendon and ultimately may have caused the tendon to snap on August 6, 2019. In his second deposition, Dr. Chung testified that Mr. Theus's work on August 6, 2019, contributed greater than fifty percent in causing his right shoulder full-thickness rotator cuff tear. Dr. Chung was also aware of Mr. Theus's prior right-shoulder injury and stated that he recovered fully after rehab, regained full function in his shoulder, and worked full duty until his work injury.

Dr. Chung further testified that Mr. Theus was honest with him throughout his evaluation, gave a full and consistent effort on exam, offered "straightforward" answers to his questions, and was consistent in his story regarding his work injury.

*Additional Lay Witness Testimony*

Mr. Theus has not had any treatment for his shoulder since Dr. Hutchison released him. He is still in pain and has limited use of his shoulder. He said his shoulder gives him problems with "lifting and maneuvering," and he still wants surgery.

Mr. Theus has not worked for Toyota since March 20, 2020, when the facility shut down due to the pandemic. He stated that the facility reopened "a couple of months later," but Toyota never called him back to work. He has spoken to Toyota representatives regarding his employment status and was told that they were waiting on a physician's note regarding his restrictions. Because Mr. Theus has been unable to have surgery, he remains under Dr. Hutchison's restrictions of no lifting or pushing greater than five pounds and no over-the-shoulder work. He stated he would like to return to work at Toyota.[2]

**Findings of Fact and Conclusions of Law**

---

[2] Mr. Theus's supervisor, Robert Yarbro, also testified. He confirmed that Mr. Theus reported an incident to him on August 8 from lifting a tote. He stated Mr. Theus only mentioned his back at that time.

4

At a Compensation Hearing, Mr. Theus must prove by a preponderance of the evidence that he is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2021).

*Compensability*

To prove a compensable injury, Mr. Theus must show that his injury arose primarily out of and in the course and scope of employment. To do so, he must prove a work-related incident or set of incidents identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A).

Here, Mr. Theus was lifting totes of parts weighing twenty-five to thirty pounds for two days when on August 6, 2019, he lifted a tote and felt pain in the right side of his back around his shoulder blade.

The Court finds Mr. Theus credible. At trial, he was calm, forthcoming, self-assured, reasonable, and honest. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014) (discussing indicia of witness credibility.) Further, his testimony was supported by his affected team member statement, his supervisor's statement, the accident report, First Report, Dr. Hutchison's intake sheet and records. After a couple of days, he noticed more pain in his right shoulder and arm and gave uncontroverted testimony that he completed a second statement specifically referencing his shoulder, although Toyota never produced the statement. Based on this evidence, the Court holds he proved a specific incident or set of incidents, identifiable by time and place of occurrence.

Further, Mr. Theus must show, to a reasonable degree of medical certainty, that the incident or incidents contributed more than fifty percent in causing the disablement or need for medical treatment, considering all causes. A "reasonable degree of medical certainty" means that, in the physician's opinion, it is more likely than not considering all causes as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(D). Thus, causation must be proven by expert medical testimony. The Court considered the competing medical opinions of Drs. Hutchison and Chung.

In denying compensability for Mr. Theus's rotator cuff tear, Toyota relied on Dr. Hutchison's opinion that Mr. Theus's employment did not contribute more than fifty percent in causing the injury because of the prior shoulder injury and perceived symptom magnification. As the panel physician, Dr. Hutchison's causation opinion is afforded a rebuttable statutory presumption of correctness. Tenn. Code Ann. § 50-6-102(14)(E). The issue is whether Mr. Theus successfully rebutted the presumption afforded Dr. Hutchison's opinion by a preponderance of the evidence. The Court finds he did.

First, the Court finds Dr. Hutchison's causation opinion based on symptom magnification unconvincing. Dr. Hutchison believed Mr. Theus was magnifying his symptoms from the first visit. Yet, he explained that it was different from malingering, did not mean Mr. Theus was feigning an injury, and he ordered an MRI. After finding a near full-thickness tear on the MRI, he stated that Mr. Theus had "a reason to be hurting" and

ordered surgery under worker's compensation. It was not until (or after) the final visit in May, when Dr. Hutchison learned that Toyota had denied the surgery, that the symptom magnification findings concerned him enough to conclude that Mr. Theus was too "over the top" in his presentation for him to say that his work contributed greater than fifty percent in causing his rotator cuff tear.

The Court likewise finds unconvincing his opinion that he could not find causation based on Mr. Theus's prior shoulder injury. Mr. Theus's uncontroverted testimony was that he had a full recovery and was able to work without problems in his right shoulder for years until his 2019 work injury. Toyota offered no evidence to show Mr. Theus required any further treatment for his prior shoulder injury or had any problems in the years leading up to the work injury. Moreover, Dr. Hutchison admitted he had no record or any evidence to suggest Mr. Theus had anything but a full recovery from his prior injury.

In contrast, Dr. Chung concluded within a reasonable degree of medical certainty that Mr. Theus's work or employment on August 6 contributed greater than fifty-percent in causing his rotator cuff tear. Dr. Chung believed the repetitive nature of Mr. Theus's work activities caused the rotator cuff tear versus one acute event, but he specifically associated the tear with Mr. Theus's lifting of the tubs on August 6 in his second deposition, which was consistent with Mr. Theus's testimony. Even Dr. Hutchison said the mechanism of Mr. Theus's injury could cause a rotator cuff tear. Dr. Chung was aware of Mr. Theus's shoulder injury from 2008 but credited Mr. Theus's history that he recovered fully from that injury, regained full function, and worked full duty until this work injury. He found Mr. Theus was honest, gave a full and consistent effort on exam, offered "straightforward" answers to his questions, and was consistent in his story regarding his work injury. Like Dr. Hutchison, no evidence was presented to Dr. Chung to suggest Mr. Theus had anything but a full recovery from his prior injury.

When faced with conflicting medical testimony, the Court must accept one expert opinion over another and, in so doing, may consider which opinion contains the more probable explanation. *Sanker v. Nacarato Trucks, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016). Further, Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum" but, instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991).

Here, the Court finds Dr. Chung's testimony sufficient to prove Mr. Theus's rotator cuff injury arose primarily out of his employment, considering all causes. Upon consideration of the totality of the medical proof and Mr. Theus's credible testimony, the Court holds Mr. Theus overcame the presumption of correctness afforded Dr. Hutchison's causation opinion, and he sustained a compensable right-shoulder rotator cuff injury.

*Permanent Partial Disability*

6

As for impairment, the Court finds Dr. Chung offered the only testimony on this point; therefore, the Court holds Mr. Theus sustained a thirteen-percent impairment.

Because the Court holds Mr. Theus sustained a compensable shoulder injury, the Court turns to his entitlement to permanent partial disability benefits. The assessment of these benefits occurs at two different times.

The first assessment takes place once the treating physician places the injured employee at maximum medical improvement and assigns an impairment rating. Based on the above findings regarding Mr. Theus's permanent impairment, the Court finds he has an anatomic rating of thirteen percent, which entitles him to 58.5 weeks of benefits. At his stipulated compensation rate of $519.89, Mr. Theus's original award is $30,413.57. *See* Tenn. Code Ann. § 50-6-207(3)(A).

The second assessment occurs at the expiration of the initial compensation period. Based on the thirteen percent impairment and Mr. Theus's maximum medical improvement date of May 4, 2020, Mr. Theus's initial compensation period expired on June 17, 2021. At that time, the parties did not dispute that he had work restrictions from Dr. Hutchison and had not returned to work for any employer; therefore, he qualifies for a resulting award and increased benefits. *See* Tenn. Code Ann. § 50-6-207(3)(B). Mr. Theus contended, without contradiction, that the multipliers of 1.35 and 1.2 apply. Applying those multipliers, Mr. Theus's increased benefits total $18,856.41.

**IT IS THEREFORE ORDERED** as follows:

1. Toyota Boshoku America or its carrier shall pay permanent partial disability benefits to Mr. Theus in the total amount of $49,269.98 ($30,413.57 original award plus $18,856.41 increased benefits).

2. Toyota Boshoku America shall pay all reasonable and necessary future medical benefits for Mr. Theus's right shoulder injury under Tennessee Code Annotated section 50-6-204, including surgery, if reasonable and necessary for the injury.

3. Mr. Theus's counsel is entitled to a twenty-percent attorney's fee to be paid from his award. *See* Tenn. Code Ann. § 50-6-226(a)(1).

4. Costs of $150.00 are assessed against Toyota Boshoku America under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (August, 2019), to be paid within five days of this order becoming final. Toyota Boshoku America shall file a statistical data form (SD2) within ten business days of the date of this order under Tennessee Code Annotated section 50-6-244.

5. Unless appealed, this order shall become final thirty-days after issuance.

**ENTERED January 21, 2022.**

*Amber E. Luttrell*
**JUDGE AMBER LUTTRELL**
**Court of Workers' Compensation Claims**

**Appendix**

**Exhibits**
1. Dr. Hutchison's deposition
1.a Dr. Hutchison's supplemental deposition
2. Dr. Chung's deposition
2.a Dr. Chung's supplemental deposition
3. Physicians Quality Care records
4. Dr. Hutchison's intake sheet
5. Affected Team Member Statement
6. Accident Report
7. Robert Yarbro's Witness Statement
8. Panel of Physicians
9. First Report of Injury
10. Excerpt of Mr. Theus's deposition
11. Job description

**Technical Record**
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Notice of Substitution of Attorney for Employee
5. Order Resetting Scheduling Hearing
6. Scheduling Order
7. Dispute Certification Notice (post-discovery)
8. Pre-Compensation Hearing Statement
9. Employer's Notice of Filing
10. Initial Joint Stipulations of the Parties
11. Employee's List of Witnesses and Exhibits
12. Order (November 5, 2021)
13. Status Hearing Order (November 15, 2021)

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on January 21, 2022.

| Name | Email | Service sent to: |
|---|---|---|
| Edward Martindale, Employee's Attorney | X | edwardlmartindale@gmail.com<br>rachalgmorris@gmail.com |

| Jeffrey C. Taylor, Employer's Attorney | X | jeff@taylorlawfirmtn.com<br>kathy@taylorlawfirmtn.com |
|---|---|---|

_____
Penny Shrum, Court Clerk
Court of Workers' Compensation Claims



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry. *See* Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*